UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| MIKITA BROTTMAN and<br>JOHN R. SIMPSON,<br><br>Plaintiffs<br><br>v<br><br>PATRICIA GOINS-JOHNSON,<br><br>Defendant | *<br>*<br>*<br>*   Civil Action No. CCB-19-2015<br>*<br>*<br>* |

\*\*\*

# MEMORANDUM OPINION

Plaintiffs Mikita Brottman and John R. Simpson brought this civil action pursuant to 42 U.S.C. § 1983 against Patricia Goins-Johnson, the former Executive Director for Field Support Services at the Maryland Department of Public Safety and Correctional Services ("DPSCS"), asserting that their due process rights were violated when DPSCS banned Brottman, a non-prisoner, from visiting Simpson, an inmate serving a life sentence at Western Correctional Institution ("WCI"), without providing "procedural protections surrounding the deprivation." ECF No. 1 at 7. Plaintiffs sought "preliminary and permanent injunctive and equitable relief including, but not limited to, the reinstatement of Dr. Brottman's visiting privileges at [WCI], filing costs, legal fees, and for any other relief that this Court deems just and proper." *Id.* at 6–7.

On August 22, 2019, Plaintiffs filed a Motion for Mandatory Injunctive Relief, again seeking the reinstatement of her visiting privileges at WCI. ECF No. 10. In a response filed on September 6, 2019, counsel for Defendant indicated that Brottman had been granted permission to attend Family Day at WCI on September 14, 2019. ECF No. 12.

On September 11, 2019, Defendant filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. ECF No. 13, 14. On September 23, 2019, Plaintiffs filed a response in

opposition as well as a Cross-Motion for Summary Judgment. ECF No. 16, 17. Defendant opposed the Cross-Motion. ECF No. 18.

A hearing is not necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons explained below, Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment will be granted, and Plaintiffs' Cross-Motion for Summary Judgment will be denied. Plaintiffs' Motion for Mandatory Injunctive Relief will be denied as moot.

**Background**

Plaintiff Brottman is a psychoanalyst, author, and college professor. Complaint at ¶10, ECF No. 1. From 2012 to 2016, she volunteered with the Prison Scholars Program at the Jessup Correctional Institution ("JCI") in Jessup, Maryland, teaching classes in literature, writing, and psychology. *Id.* at ¶5. In June 2016, Brottman published a semi-autobiographical work of creative non-fiction based on her experiences teaching inmates at JCI, entitled *The Maximum Security Book Club—Reading Literature in a Men's Prison*. *Id.* at ¶6. Brottman states that prior to its publication, the manuscript was seen and approved by the Warden at JCI and reviewed by the DPSCS Public Information Officer and its attorney. *Id.*

On August 15, 2016, Brottman was notified that her volunteer privileges at JCI were suspended "due to [her] failure to adhere to rules." *Id.* at ¶7. Brottman claims that when a journalist inquired further on her behalf, the Communications Director at DPSCS indicated that "the new warden has some concerns about Ms. Brottman's relationships with the inmates, evidenced by her publications," "We did not give Ms. Brottman permission to write the book," and "we have given Ms. Brottman the opportunity to volunteer elsewhere in the DPSCS." *Id.* at ¶8.

Approximately six months after Brottman's classes at JCI were canceled, she began corresponding with Plaintiff Simpson. *Id.* at ¶12. Brottman and Simpson wrote letters to each

other for almost one year, began talking on the phone, developed a romantic relationship, and became engaged in 2019. *Id.* At the time Plaintiffs filed the Complaint, Brottman had visited Simpson at WCI approximately 20 times. *Id.* In August 2018, she attended the prison Family Day as Simpson's guest. *Id.* Plaintiffs aver that Simpson has been "a model prisoner" with no infractions in over 15 years, and Brottman is "a respectable member of the community" with no criminal history. *Id.*

When Brottman tried to visit Simpson at WCI on May 10, 2019, she was denied entrance and informed that she had been "banned" from WCI pursuant to orders from DPSCS headquarters. *Id.* at ¶1. Brottman contacted several DPSCS officials. *Id.* at ¶2. On June 19, 2019, Simpson received a letter from the WCI Warden, addressed to Brottman, stating:

> This letter is to advise you that in compliance with the Department of Public Safety and Correctional Services (DPSCS) regulation OPS.195.0003 (Inmate Visiting Regulations), your visiting privileges are suspended indefinitely for all State Correctional Facilities. Also, you are no longer permitted on Western Correctional Institution's property. According to our Offender Database, you were banned at Eastern Correctional Institution.[1] Therefore, until the denying institution removes the ban, your visiting privileges will not be reinstated.

*Id.* at ¶3.

On June 29, 2019, Brottman received a letter from Defendant stating that individuals who have been banned "through another means" are prohibited from "further entering the facilities." *Id.* at ¶4. Defendant stated that DPSCS was unable to "better streamline [its] process sooner," and explained that "[t]his department state-wide ban is effective as of the date of your initial ban via volunteer services." *Id.*

Plaintiffs filed this action on July 15, 2019, and a Motion for Mandatory Injunctive Relief on August 22, 2019. ECF Nos. 1, 10. On September 6, 2019, counsel for Defendant stated that

---

[1] Plaintiffs claim that Brottman has never visited Eastern Correctional Institution ("ECI"). Because Brottman had previously been notified that her volunteer privileges at JCI were suspended, it appears that the WCI Warden was referring to JCI instead of ECI.

Brottman had been granted permission to attend Family Day at WCI on September 14, 2019.  ECF No. 12.  On September 11, 2019, Defendant filed its dispositive motion arguing that Plaintiffs failed to state a cause of action pursuant to 42 U.S.C. § 1983, Simpson failed to exhaust administrative remedies, and the issue is moot because Brottman had since been reinstated as a visitor for Simpson.  Motion, ECF No. 13; Memorandum, ECF No. 14-1 (citing Decl. of Michael Yates at ¶3, ECF No. 13-1).  According to Defendant, "[a]s long as the Plaintiffs abide by DPSCS rules about visitation, they may participate in visitation at WCI."  ECF No. 13-1 at ¶3.

**Standard of Review**

Fed. R. Civ. P. 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004).  Under Rule 12(b)(1), the plaintiff bears the burden of proving the existence of subject matter jurisdiction.  *See Demetres v. E. W. Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3); *see also Ellenburg v. Spartan Motors Chassis*, Inc., 519 F.3d 192, 196 (4th Cir. 2008).  Thus, the court may properly grant a motion to dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005) (citing *Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md. 1996)).

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the

elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

## Analysis

### I. Exhaustion

Simpson's claim is subject to dismissal pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e because it has not been properly presented through the administrative remedy procedure. The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *See Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense. *See Jones v. Bock*, 549 U.S. 199, 215–16 (2007). Nevertheless, a claim that has not been exhausted may not be considered by this court. *See id.* at 219–20. In other words, exhaustion is mandatory, and a court usually may not excuse an inmate's failure to exhaust. *See Ross v. Blake*, 136 S. Ct. 1850, 1856–57 (2016) (citation omitted).

5

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the Inmate Grievance Office ("IGO") against any DOC official or employee. Md. Code Ann. (2008 Repl. Vol.), Corr. Servs. ("C.S.") § 10-206(a). However, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional Administrative Remedy Procedure ("ARP") process, before filing a grievance with the IGO. *See* C.S. § 10-206(b). There is an established administrative remedy procedure process that applies to all Maryland prisons. COMAR 12.02.28.01, *et seq.* Therefore, when the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO.

Here, it appears that Simpson has filed only one ARP at WCI, and it was unrelated to the issue raised in this case. ARP Index Report, ECF No. 13-1 at 3–6. In addition, he has filed no grievances with the IGO. Decl. of Samiyah Hassan, ECF No. 13-2. As discussed above, the PLRA requires that inmates exhaust all available remedies. Because Simpson failed to do so, his claim will be dismissed. Even if Simpson had exhausted his claim, however, it nonetheless fails as explained below.

**II.   Visitation Claim**

Section 1983 provides that a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). To state a claim under § 1983, a plaintiff must allege: (1) a deprivation of "rights, privileges or immunities secured by the Constitution and laws" of the

United States; and (2) that the alleged deprivation was committed by a person acting under color of law.  *West v. Atkins*, 487 U.S. 42, 48 (1988) (citation omitted).

This court has previously concluded that "there is no constitutional right to prison visitation, either for prisoners or visitors." *White v. Keller*, 438 F. Supp. 110, 115 (D. Md. 1977), *aff'd*, 588 F.2d 913 (4th Cir. 1978).  "It is . . . clear that whatever the source and whatever the extent of the right to associate physically in free society, that right may be curtailed upon conviction for violation of the criminal laws." *Id.* at 115–16 (citing *Jones v. N. Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125–26 (1977)).  Moreover, "[t]he denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence, and therefore is not independently protected by the Due Process Clause." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 461 (1989) (citation and quotation marks omitted). Withdrawal of visiting privileges is "not a dramatic departure from accepted standards for conditions of confinement."  *Overton v. Bazzetta*, 539 U.S. 126, 137 (2003) (citing *Sandin v. Conner*, 515 U.S. 472, 485 (1995)).  Thus, Plaintiffs fail to state a valid claim.

### III.  Mootness

A case is deemed moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *United States v. Hardy*, 545 F. 3d 280, 283 (4th Cir. 2008) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).  For a declaratory judgment to issue, there must be a dispute which "calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts." *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 241–42 (1937).  Section 1983 actions seeking injunctive and/or declaratory relief have been declared moot when the practices, procedures, or regulations challenged were no longer in use. *See, e.g.*, *Tawwab v. Metz*, 554 F.2d 22, 23–24 (2d Cir. 1977); *Bradley v. Judges of Superior Court*, 531 F.2d 413, 417 (9th Cir. 1976); *Uzzell v. Friday*, 401 F.

Supp. 775 (M.D.N.C. 1975), *aff'd in pertinent part*, 547 F.2d 801 (4th Cir. 1977); *Rappaport v. Little League Baseball, Inc.*, 65 F.R.D. 545, 547–48 (D. Del. 1975).

Here, Brottman's visitation privileges have been reinstated, and she has been approved as a visitor for Simpson. Thus, the court is unable to provide the relief sought in the Complaint. As the case is now moot, Plaintiffs' claim is subject to dismissal on that ground.

In Plaintiffs' opposition to Defendant's motion, they argue that the court should reach the merits because "the suspension might be imposed arbitrarily again." ECF No. 17-1 at 4. Indeed, a claim that is moot may be considered by the court if it is "capable of repetition, yet evading review." *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007). The exception, however, is limited to exceptional situations. *See Incumaa v. Ozmint*, 507 F.3d 281, 289 (4th Cir. 2007). "In the absence of a class action, jurisdiction on the basis that a dispute is 'capable of repetition, yet evading review' is limited to the exceptional situation in which (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Id.* (internal citations and quotation marks omitted).

Plaintiffs have not provided any information to support their contention that Brottman's visitation privileges would be revoked again. Notably, Plaintiffs do not acknowledge Defendant's explanation that Brottman had been banned from WCI not arbitrarily but as a result of a continuing ban from all DPSCS facilities following the events surrounding her volunteer work at JCI. In any event, as previously stated, "there is no constitutional right to prison visitation . . . for . . . visitors," *White*, 438 F. Supp. at 115, and "[t]he denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence." *Thompson*, 490 U.S. at 461 (citation and quotation marks omitted).

Lastly, Plaintiffs' claim for filing costs and legal fees "'does not avert mootness of the

underlying action on the merits.'" *See Bd. of Educ. for Montgomery Cty., Md. v. Khan*, No. CIV.A. DKC-04-2365, 2005 WL 2250796, at *3 (D. Md. Sept. 15, 2005) (quoting *S–1 & S–2 v. Spangler*, 832 F.2d 294, 297 n.1 (4th Cir. 1987)).[2] "If the potential for recovering costs was sufficient to keep an otherwise moot claim alive, it is indeed difficult to imagine any case that would ever be moot because such costs are awarded to prevailing parties as a matter of course." *Loeh v. Commandant, U.S. Disciplinary Barracks*, No. 03-3366-JWL, 2004 WL 1490403, at *1 (D. Kan. June 30, 2004) (citing Fed. R. Civ. P. 54(d)(1)). Court costs are sunk costs of litigation and a claim for such fees is "insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990). Thus, Plaintiffs' desire to recover their costs is insufficient to create an Article III case or controversy where the merits of their underlying claim are moot.

## Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment will be granted, and Plaintiffs' Cross-Motion for Summary Judgment will be denied. Plaintiffs' Motion for Mandatory Injunctive Relief will be denied as moot. A separate Order follows.

\_\_\_\_5/13/20_____ _____/S/_____
Date                                            Catherine C. Blake
                                                United States District Judge

---

[2] Unpublished opinions are cited for the soundness of their reasoning rather than for any precedential value.